IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LINDA TERRELL,

        Plaintiff,

v.                                                         Civil Action No. 2:13-cv-16833

C. R. BARD, INC.,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court are all remaining pretrial motions. All are ripe for adjudication.

I.    Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 58,000 cases currently pending, approximately 7,000 of which are in the Bard MDL, MDL 2187. In an effort to efficiently and effectively manage this MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this

end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order ("PTO") # 102, No. 2:10-md-2187 [ECF No. 729]. This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Thereafter, I entered orders on subsequent waves. Ms. Terrell's case was selected as a Wave 1 case by the plaintiffs. PTO # 118, No. 2:10-md-2187 [ECF No. 841].

## II. Legal Standards

### a. Summary Judgment

To obtain summary judgment, "the movant must show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In turn, to avoid summary judgment, the nonmovant must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### b. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. To determine the applicable state law for a dispositive motion, the court generally refers to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the plaintiff did here, I consult the choice-of-law rules of the state in which the implantation surgery took place—in this case, Illinois. *See Sanchez v. Bos. Sci. Corp.*, No. 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product.").

Illinois has adopted the most-significant-relationship test as enumerated in Restatement (Second) of Conflict of Laws. *See Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 901 (Ill. 2007); *Gregory v. Beazer E.*, 892 N.E.2d 563, 578 (Ill. 2008). Under that test, courts should consider the following factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *See Townsend*, 879 N.E.2d at 901 (citing Restatement (Second) of Conflict of Laws § 145(2), at 414 (1971)). Here, Ms. Terrell's implantation occurred in Illinois and any alleged injuries occurred in Illinois. Therefore, I apply Illinois's substantive law to the plaintiff's claims in this case.

III. Discussion

    a. **Bard's Motion for Summary Judgment [ECF No. 28]**

Bard's Motion for Summary Judgment [ECF No. 28] is **GRANTED in part** as

to the following conceded claims: manufacturing defect and breach of warranty (express and implied).

For reasons appearing to the court, Bard's Motion for Summary Judgment [ECF No. 28] is also **GRANTED in part** as to negligent inspection, packaging, marketing, and selling. Under Illinois law, "[a] product liability action asserting a claim based on negligence . . . falls within the framework of common law negligence." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007). "[A] plaintiff must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach, and damage." *Id.*

Bard contends that the plaintiff's claims for negligent inspection, packaging, marketing, and selling of the product fail for lack of evidence. The plaintiff argues that Bard misconstrues the nature of her negligence argument, and that her allegations regarding the alleged negligent inspection, marketing, labeling, packaging, and selling of the Align comprise part of her general negligence claim, rather than distinct theories of recovery. In short, the plaintiff asserts that Bard failed to adequately study or test its mesh products to determine if the products were adequately safe.

A review of the plaintiff's Count I in the Master Complaint, Master Compl. ¶¶ 62–67, No. 2:10-md-2187 [ECF No. 199], reveals that the plaintiff asserted three distinct negligence theories under "Count I." The bulk of the Count I allegations make out claims for negligent failure to warn and negligent design defect. The other negligence allegations posit that Bard was "negligent . . . in designing,

4

manufacturing, marketing, labeling, packaging, and selling" the product. Master Compl. ¶ 64, No. 2:10-md-2187; *see also* Compl. ¶ 6(a) ("[Bard] failed to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the product . . . .") . Thus, the plaintiff's concerns that Bard is misconstruing the plaintiff's negligence claim are meritless; Bard simply chose to address the plaintiff's different theories of negligence separately. However, apart from reciting allegations that form the plaintiff's failure to warn and design defect claims, the plaintiff does not offer sufficient support to create a genuine dispute that Bard breached a legal duty that caused the plaintiff's injuries in their "inspection, marketing, labeling, packaging, or selling" of the product. Accordingly, Bard's Motion on these points is **GRANTED**.

After considering the parties' proffered arguments and evidence, I **FIND** that genuine disputes of material fact exist regarding the plaintiff's remaining claims. Accordingly, to the extent Bard's Motion challenges any other claims, the Motion is **DENIED**.

### b. Bard's Motion for Partial Summary Judgment [ECF No. 26]

The question of whether a plaintiff is entitled to punitive damages often involves an interlocking web of factual determinations respecting the defendant's conduct. The evidentiary record is frequently muddled enough on the point that genuine issues of material fact remain. That is the case here. Consequently, Bard is not, at least at this stage of the case, entitled to judgment as a matter of law on the punitive damages claim. Thus, the Motion for Partial Summary Judgment [ECF No.

26] is **DENIED**.

IV.  Conclusion

The court **ORDERS** that:

- Bard's Motion for Summary Judgment [ECF No. 28] is **GRANTED in part** and **DENIED in part**;

- Bard's Motion for Partial Summary Judgment [ECF No. 26] is **DENIED**;

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 26, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE